Frazier, J. (orally).
Patrick H. Gaffney commenced an action in the court of ■common pleas to recover damages for injuries caused by the Railway Company in the running of its trains, whereby on the 9th day of April, 1892, while, as he avers in his petition, he was traveling upon the highway where the highway crosses the railway, driving a horse and buggy, towards the village of Painesville; that as he approached the crossing, exercising due care, he stopped his horse a short distance therefrom, and looked along said track so far as he was able and until his view was cut off, and listened to ascertain if any train was ap *34 proaching said crossing. That no east bound train was in view, and no train west bound was seen or heard by him, and thereupon he, in the exercise of due care and caution, drove along said highway toward said crossing to pass thereon. That when his horse was upon the track of the railroad, a passenger train, coming from the east and running with great speed, ran upon and against him, and severely injured him and his horse, and destroyed his buggy and harness.
He avers that the defendant neglected to ring the bell or blow the whistle as the train approached .the crossing, and further avers that the defendant for many years had knowledge that .said crossing was and is an unusually dangerous place, by reason of the situation of said track and highway and the character of the embankment and the surroundings"; that the running of trains over said crossing was especially and peculiarly dangerous to life and property of travelers using the highway.
That the defendant by reason of the premises Avas bound, and it Avas the duty of said company, to make said crossing reasonably safe for travelers along the higlway, and that it was the duty, of the company to have placed at the crossing a flagman, or to have provided other reasonable and proper means and appliauces by gates, bars or otherwise to warn travelers on the highAvay of approaching trains.
The cause being at issue, was tried to a jury, which found for the plaintiff. The evidence, the rulings of the court, the requests to charge, the charge as given, and numerous exceptions are set forth in the bill of exceptions.
In argument, counsel for the plaintiff in error insists upon the folloAving errors, either of Avhich, he claims, should entitle it to a reversal.of the judgment:
First — In permitting the Avife and daughter of plaintiff to testify to their observation of his suffering pain.
Two questions and answers in the testimony of Mrs. Gaffney will be sufficient to illustrate its character.
“ Q. During the entire period of four weeks — three or four
*35 weeks — whatever it was — during the time that the doctor called, how was he, if you observed, as to his suffering pain, and to what extent ?”
“A. Well, he suffered a great deal of pain. He could not lie down because he was in such pain when he laid down. The only way that he could get any rest at all was sitting propped up in a large rocking chair with pillows . around him, and at the greatest extent he could not lie more than an hour and a half out of twenty-four.”
“ Q. Take the period from the time that the doctor ceased his visits down to the present time, you may state to the jury and describe to them as nearly as you can, from what'you have seen and observed of your husband, as to his condition of suffering pain or not?”
“ A. I do not think there is a day passes butjwhat hecomplains of suffering pain in his back and side, and especially if he goes to the garden to work a little while; when he comes in he will be pale and look excited.”
A motion was made to exclude the evidence, which was overruled and an exception taken.
See rule as stated by Owen, J., in Railroad Company v. Schultz, 43 Ohio St. 281.
In Village of Shelby v. Clagett, 46 Ohio St. 549, it is held : “ A non-professional witness who has had opportunities to observe a sick or injured person, may give in evidence his opinion of the condition of such person, in respect to being weak and helpless or not, and of the degree of suffering which he endured, provided such opinion is founded on his own observation of the person to whom his evidence relates, and is limited to the time that the person was under the observation of the witnes.” Bradbury, J., in the opinion says: “ The evidence admitted over the objection of the defendant below, related to the condition of Mrs. ClaggetFs health, or to the pain she suffered, and, as far as we deem it necessary to examine it, was given by non-professional witnesses, and partakes of the nature of 'opinion more than of fact. For in *36 stance, Mrs. Webber testified that ‘ she (Mrs. Ciagett) was in a very helpless condition, never leaving her bed, except to have her bed made each day, so far as I know ’; and again, ‘ her suffering was very intense, and often seemed more than she could bear.’ These statements, except that portion of the first one respecting her ‘ never leaving her bed, etc. are in a strict sense, opinions, or inferences drawn from what the witness had observed while in attendance about the person of Mrs. Ciagett. Now, the witness could portray to the jury only in a faint and imperfect way the scene in the sick chamber as it presented itself to her, and upon which she based her statements that Mrs. Ciagett ‘ was very helpless * * ’ and (suffered intensely * The tones of the voice, the expressions of the face, and the movements of the limbs, which are the natural language of pain, so readily and clearly understood by those about the sufferer, can not be reproduced so as to impress the jury as they did the witness; neither can those appearances that accompany and establish the fact of weakness and helplessness. Therefore, to say that those about a *iek or injured person should not be permitted to give in evidence their opinion, based on observation, of the condition or suffering of the patient, is to exclude from the jury the only efficient proof of those facts. The rule admitting such evidence is one of necessity. Where the fact to be established must ‘ be derived from a series of instances passing under the observation ’ of witnesses ‘ which yet they never could detail to the jury ’, opinion will be received. McKee v. Nelson, 4 Cowen, 356; see Steamboat v. Logan, 18 Ohio, 396, where this rule in 4 Cowen is quoted with approval; see, also, Stewart v. State, 19 Ohio, 302; Yahn v. Ottumwa, 22 Am. Law Reg. 644, and note on page 653; 7 Am. & Eng. Encyclopedia of Law, 492; Parker v. Steamboat Co., 109 Mass. 449. And when it is remembered that the intelligence and fairness, opportunities to observe, and other circumstances affecting the credibility of the witness, can be called out by a cross-examination, there remains but little solid objection to the reception of this class of testimony.”
*37 Evidence of this character, coming as it does, from the wife and daughter, if not corroborated, may properly .be the subject of suspicion. As I understand counsel for the plaintiff in error, he does not question the right of non-professional witnesses to testify that at a certain specified time, and in connection with the pain and suffering, that he suffered, or appeared to suffer pain; but he contends and insists that the members of the plaintiff’s family should not have been permitted to testify that plaintiff complained of continuous suffering and pain.
We think the questions competent, and the motion to exclude goes to the whole of the answers, and if any part is competent the court might well overrule the motion, nor can we say that the answers violate the rule laid down in Village of Shelby v. Clagett, supra. For these reasons we would not, in our judgment, be justified in reversing the judgment.
The second ground insisted on for reversal, is permitting the plaintiff, over the objection of defendant, to prove injuries to the persons and property of others at the crossing in question, prior to the injury to plaintiff.
Counsel for the defendant in error argue that this evidence is warranted by the holding in the case of the Village of Ashtabula v. Bartram, 3 O. C. C. Reports, 640.
This is an entire misconception of the rule laid down in the case of the Village of Ashtabula v. Bartram.
In that case Laujbie, J., in delivering the opinion of the court, in referring to the cases in which such evidence is admissible, says:
“ In all cases where such evidence was admitted, it was admitted for the purpose of showing the dangerous character or condition of the thing, the place, or the act in question, and to prove notice of such character or condition to the defendant ; but not to prove that the defendant was negligent in using such thing, or permitting such place to be in such condition, or in doing such act; nor that the plaintiff had exercised proper care; nor that such condition or such act had *38 been, as between plaintiff and defendant, the sole cause of the injury. As to these latter issues, such evidence would be collateral and incompetent, but on the former it would have a direct bearing. The question, therefore, whether such other and similar accidents had been caused in whole or in part by the negligence of such other persons, could not become an issue in the case to distract the mind of the jury from the real issue; and it would be the duty of the court, at least upon request, to instruct the jury directly as to the purpose for which only such evidence could be regarded, as the court would have done, undoubtedly, if the defendant had so requested in this instance.
“ ‘ It is the policy of the law to exclude evidence of similar accidents, when the prudence of every person who had met with a-like accident would be involved; but when evidence of similar accidents is given simply to illustrate a physical fact, before or after the occurrence being investigated, and the conditions are the same, such evidence is admissible.’ ” City of Aurora v. Brown, 12 Ill. App. 122. This rule excludes the possibility of a collateral issue, because such evidence is admissible only where the dangerous character or. condition of the place, thing or act in question, or knowledge thereof by defendant, is in issue, and then only to illustrate or explain such character or condition, or to show such knowledge, and because under it no evidence .is competent, or is permitted either way, as to the carefulness or negligence of such persons in such other accidents. In cases where such character or condition is not in issue, and where the only issue made is upon the negligence of the parties, such testimony would not tend to prove any issue of fact, unless it would be to prove • that the defendant was negligent, or that the plaintiff was not, and would be of no weight either way until the jury had first tried and determined which party had been guilty of negligence in such other accidents, thus presenting a clear collateral issue to be tried, and therefore in such cases, such .evidence would not be competent.”
*39 In Brewing Co. v. Bauer, 50 Ohio St. 560, it is held : “In an action by an employe against his employer for damages resulting from an injury received in operating a machine, caused by its defective construction, the defect being charged to the negligence of the employer, it is competent to prove that, on a former occasion, while it was being operated by another, the machine worked in a manner similar to when the plaintiff was injured. But such evidence is only competent to prove the defective character of the machine and the employer’s knowledge of the fact; it is not competent to prove actionable negligence on the part of the employer at the time the plaintiff was injured; and the jury should be so instructed at the time it is received.”
In the opinion Judge Minshall, says:
“The only question in the case is, as to the admissibility of the evidence offered to show that on former, occasions, when the elevator was being operated, barrels and packages had fallen back and injured the persons operating it, as in this case.
It is claimed to be incompetent on the ground that it raises collateral issues, tending to mislead the jury and to surprise the opposite party, by the introduction of evidence for which he could not have been prepared by the nature of the issue. The rule relied on is thus stated by Greenleaf: “The evidence offered must correspond with the allegations, and be confined to the point in issue.” Greenleaf on Evidence sec. 51. And he adds, in the following section : “This rule excludes all evidence of eollateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal matter or fact in dispute.’ ”
After citing cases for and against the rule, he concludes: “There was no error in admitting the evidence with a direction to the jury that it was to be confined to these purposes, and could not be considered on the question of the defendant’s negligence in the premises.”
*40 In Wooley v. Grand Street & Newton Railroad Co., 83 N. Y. 122; the question was as to the condition of a frog placed by the company connecting its track with the tracks of another road over which it ran its cars.
Pomeroy v. Village of Saratoga Springs, 104 N. Y. 460; the question was as to the condition of the sidewalk by reason of ice formed thereon.
District of Columbia v. Arms, 107 U. S. 519; was as to the condition of an unguarded sidewalk.
An examination of the cases in which such evidence has been admitted, will show that each relates to the physical condition of the place or thing; to something inherent in it, and not connected with or dependent upon the manner in which it is used.
In the case at bar, the place itself, is not dangerous. The place itself is harmless. Its danger depends wholly upon its use and the manner in which the trains are run over it, and each accident or occurrence given in evidence involves the question of negligence on the part of the company or its employes, and of care or want of care upon the part of the person injured, and this raises collateral issues which every authority forbid.s.
This evidence is incompetent, and should not have been admitted.
Third — Evidence was introduced by plaintiff tending to prove, that by reason of the company's tracks crossing the highway at an acute angle, and a curve in the tracks to the east; the elevation of the ground, with trees, and buildings intervening, a traveler upon the highway approaching from the north could not see a train approaching from the east in time to avoid danger in crossing; and evidence on the part of the defendant tending to prove, that if plaintiff had looked, he could have seen the approaching train, and avoided the injury. A view of the place was had by the jury under section 5191, of the Revised Statutes, which provides:
“The court, when of opinion it is proper for the jurors to *41 have a view of the property which is the subject of litigation, or of the place iu which any material fact occurred, may order them to be conducted, in a body, under the charge of an officer, to the place, which shall be shown to them by a person appointed by the court for that purpose; and while the jurors are thus absent, no person, other than the person so appointed, shall speak to them on any subject connected with the trial-”
The court among other things charged the jury :
“ Now, gentlemen of the jury, having placed yourselves there and looked, as I have no doubt you would, up the track, what do you say — how near would one have to be to this crossing before he would be in view of the track and of an approaching train ? And if he had looked, would he have seen ? And you should take this into consideration, gentlemen of the jury, and bear in mind, exercising your own common sense, that if a person had looked, and the situation was such that he must have seen when he looked, then gentlemen of the jury what weight would you give to the testimony of a witness who says he looked, when, if he had looked from the point where you yourselves looked, he would and must have seen the train.”
This raises the question, what is the object of the view under this section of the statute? Is it to enable them to receive independent evidence from that view, or it is to enable them to apply the evidence which shall be introduced and submitted to them ?
In Columbus v. Bidlingmeier, 7 C. C. R. 136, it is held, “A view under Revised Statutes, sections 5189i and 5191, is solely to enable the jury to apply the testimony adduced upon the trial; and an instruction that the jury must consider such view as evidence in the caséis error.” In the opinion Stewart, C. J., says, “ At common law a view by the jury was only taken in certain real actions, and was so taken upon the theory that the jury were acting not only as triers of the facts, but as viewers, and it was intended in that way they should *42 procure evidence to assist them in arriving at some conclusion.
“Now, however, the whole subject of a view by a jury is regulated by statute, and it seems to us that our statutes provide for two kinds of view by the jury. One in which they are to act as viewers, and the other in which they view the premises solely in order to enable them the better to apply the testimony adduced on the trial. The first of these is found in the Revised Statutes, sections 4467 and 4560, in which the jury are sworn to examine and determine the matters in controversy, faithfully and impartially, and to the best of their knowledge, and from actual view of the premises.”
What would be the result if a jury were permitted, as in the charge in this case, to determine the case from their own actual observation, and in disregard, as we think the instruction permitted, of the testimony given, that they should judge for themselves? What control would the trial judge have over the verdict of a jury ? What remedy would a party have by way of a bill of exceptions? The bill must contain all the evidence in order that the reviewing court may determine whether the verdict is contrary to, or supported by, the evidence. If a jury permitted to view the premises, were allowed to consider, as evidence, the information thus received, it would be impossible to tell how much reliance they placed upon the evidence of the view; and it would be impossible to get such evidence in the record. We are of opinion, in view of all the provisions of our statutes, the view under section 5191, of the Revised Statutes, is only for the purpose of enabling the jury the more readily to understand and apply the evidence submitted in court. And for this reason we think the court erred.
Fourth — The plaintiff avers in his petition that he stopped and looked, and at the trial testified as follows :
“Q. As you approached the crossing, you may state ' to the jury what you did by way of discovering approaching trains ?
*43 “A. Well, I come along until I got in the neighborhood of the railroad, and I stopped and looked to see if there was an opportunity for me to pass without interfering with this train, and looking for this train I stopped and loked east and west to see if there was any train coming, and listened, and I could not hear anything, and I started and got pretty well over when there was a train come right onto me from the east.”
There was also other testimony tending to corroborate him in the fact that he stopped and listened.
He testififed that the signals by the whistle and bell were not given, and there was testimony tending to corroborate him. The defendant introduced testimony tending to prove that the signals were given at the usual place, and as required by the statute. Also tending to prove that the plaintiff was deaf, so deaf that he would not likely hear the sound of the whistle or the ringing of the bell, and that instead of stopping, he drove upon the track at a full trot, without any halt or stop.
The defendant requested the court to charge the jury : “If there were obstructions to the plaintiff’s line of vision in the direction from which the locomotive was coming, that fact made it the more necessary that he should use other means to discover danger, and if he could not avoid danger otherwise than by stopping and listening, then it was his duty, before going upon the track, to stop and listen, and if his failure to do so contributed to the injury, plaintiff cannot recover.”
Which instruction the court refused to give, but charged the jury:
“Now, gentlemen of the jury, we have before said it was not his duty ; he was not required in approaching the crossing to stop, unless he had heard the whistle, the rumbling of the cars, the ringing of the bell, or something to indicate that the train was approaching. In Ohio a man is not required to stop when he comes to a crossing, unless there is something which would indicate to an ordinarily cautious man that there *44 might be a train approaching. But when he comes near to it, he would have no right to rush headlong and recklessly onto it because he had not heard anything. He should take ordinary care to look; he should take ordinary care to listen. If, by looking and listening, then he had reason to suppose there was a train approaching, it was his duty to stop, and not take any chance in passing over in advanee of it; and if he did, and got hurt thereby, he himself would have no right to recover.”
The duty of the railroad, or of a person approaching a known railroad crossing, has been laid down, so far as applicable to the cases then under investigation, in the cases of The Cleveland, Columbus & Cincinnati Railroad Company v. Crawford, Administrator, 24 Ohio St. 631; Bellefontaine Railway Co. v. Snyder, 24 Ohio St. 670; Cleveland, Columbus, Cincinnati & Indianapolis Railway Co. v. Elliott, 28 Ohio St. 341; Pennsylvania Co. v. Rathgeb, 32 Ohio St. 66; Railway Co. v. Schneider, 45 Ohio St. 678.
It is held in Railway Co. v. Geiger, 8 C. C. Rep. 41: “A person in the use and command of the ordinary human faculties, driving along a public highway, on coming to a known railroad crossing at grade where trains are, to his knowledge, about to pass, is guilty of negligence if he attempts to cross the railroad tracks without first stopping to listen, and without looking for approaching trains, when, by looking from his vehicle, he could have seen an approaching train when he was still at such distance from the track that by stopping he could avoid danger, * * * although neither of the signals of the approach of the train required by statute was given.”
A charge should have special reference to the facts of the case on trial. In the case at bar, the plaintiff, in his petition, states he stopped and looked ; and in his testimony says, “ I stopped and looked to see if there as an opportunity for meto pass without interfering with this train, and looking for this train, I stopped and looked east and west, to see if there was any train coming,” and offered testimony of other witnesses tending to prove that he stopped.
Theodore Hall, for plaintiff.
George W. Alvord and Homer Harper, for defendants.
The defendant offered evidence tending to prove that he did not stop, and that he drove rapidly and recklessly upon the track.
Plaintiff was familiar with the crossing and the time the train was due, and was on the lookout for this particular train.
It is claimed that, in view of the facts, the charge is erroneous. We are of opinion that in connection with the facts, the charge, if not erroneous, is calculated to mislead the the jury.
Fifth — As to the claimed right to recover by reason of the company not having erected gates or other barriers, or placed a flagman at the crossing. The injury to plaintiff occurred at a public road crossing outside of the Village of Painesville. There is no rule of law requiring a railroad to erect gates or keep a flagman at such road crossing by its tracks, to give to passers-by notice of the approach of trains. The company have the right to run their trains carefully and prudently on their track, so as not, in the exercise of their own right, to injure others in the prudent exercise of their rights. But, beyond this, it cannot be said that the company is bound to erect gates, or place a flagman at the crossing of the road. Such a crossing is dangerous only when the company makes it so by propelling its engines across it. The statute, therefore, for the protection of human life, exacts from the company a public warning of the approach of such danger. The sounding of the whistle, and the ringing of the bell, are positive requirements of the statute to warn the traveler on the highway, and if omitted, and injury results from their omission, which would not have occurred if the statute had been complied with, the company so failing or neglecting will be liable in damages for the consequences of its negligence or omission.
Judgment reversed, and cause remanded for a new trial.